## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HUMBLE SURGICAL HOSPITAL, LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO. _____ |
| | § | |
| AETNA LIFE INSURANCE CO., | § | JURY DEMANDED |
| AMERICAN EXPRESS HEALTHCARE | § | |
| REIMBURSEMENT PLAN, AMERICAN | § | |
| EXPRESS COMPANY; ANADARKO | § | |
| PETROLEUM CORPORATION | § | |
| MEDICAL PLAN, ANADARKO | § | |
| PETROLEUM CORPORATION; | § | |
| BECHTEL MEDICAL AND DENTAL | § | |
| PLAN FOR EMPLOYEES, BECHTEL | § | |
| GLOBAL CORPORATION; BMC | § | |
| SOFTWARE, INC. HEALTH BENEFIT | § | |
| PLAN, BMC SOFTWARE, INC.; | § | |
| BOOMERANG TUBE, LLC EMPLOYEE | § | |
| BENEFITS PLAN, BOOMERANG TUBE, | § | |
| LLC; BP CONSOLIDATED WELFARE | § | |
| BENEFIT PLAN, BP CORPORATION | § | |
| NORTH AMERICA, INC.; ENTERGY | § | |
| CORPORATION COMPANIES' | § | |
| EMPLOYEES' WELFARE BENEFIT | § | |
| TRUST, ENTERGY CORPORATION; | § | |
| EXXONMOBIL MEDICAL PLAN, | § | |
| EXXON MOBIL CORPORATION; | § | |
| FIRSTGROUP AMERICA, INC. HEALTH | § | |
| & WELFARE PLAN, FIRSTGROUP | § | |
| AMERICA, INC.; GRAHAM PACKAGING | § | |
| COMPANY GROUP MEDICAL PLAN, | § | |
| GRAHAM PACKAGING CO., L.P.; | § | |
| HARSCO CHOICE WELFARE BENEFIT | § | |
| PLAN, HARSCO CORPORATION; | § | |
| HCA, INC. HEALTH & WELFARE | § | |
| BENEFITS PLAN, HCA, INC.; HOME | § | |
| DEPOT MEDICAL AND DENTAL PLAN, | § | |
| HOME DEPOT USA, INC.; LOWE'S | § | |
| COMPANIES, INC. WELFARE PLAN, | § | |
| LOWE'S COMPANIES, INC.; | § | |
| LYONDELL BASELL GROUP WELFARE | § | |

**BENEFITS PLAN, LYONDELL** §
**CHEMICAL COMPANY; TYCO** §
**INTERNATIONAL HEALTH AND** §
**WELFARE BENEFITS PLAN, PENTAIR** §
**VALVES & CONTROLS, INC.; SCI** §
**WELFARE BENEFIT PLAN, SCI** §
**MANAGEMENT, L.P.; THE DOW** §
**CHEMICAL COMPANY MEDICAL** §
**CARE PROGRAM, THE DOW** §
**CHEMICAL COMPANY; UNITED** §
**AIRLINES CONSOLIDATED WELFARE** §
**BENEFIT PLAN, UNITED AIRLINES,** §
**INC.; UPS HEALTH & WELFARE PLAN,** §
**UNITED PARCEL SERVICE OF** §
**AMERICA, INC.; W. W. GRAINGER,** §
**INC. GROUP BENEFIT PLAN, W. W.** §
**GRAINGER, INC.; WAL-MART STORES,** §
**INC. ASSOCIATES HEALTH &** §
**WELFARE PLAN, WAL-MART STORES,** §
**INC.; and WOOD GROUP** §
**MANAGEMENT SERVICES, INC.** §
**HEALTH BENEFIT PLAN, WOOD** §
**GROUP MANAGEMENT SERVICES,** §
**INC.,** §
 §
            **Defendants.** §

## PLAINTIFF HUMBLE SURGICAL HOSPITAL, LLC'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Humble Surgical Hospital, LLC ("HSH") files this Original Complaint against Defendants, and would respectfully show the Court as follows:

## I.  INTRODUCTION

1. HSH files this lawsuit as a result of a concerted scheme by Defendants to wrongfully deny virtually all insurance claims submitted for medical treatment provided at HSH since approximately October 25, 2013.  The denial of these valid insurance claims is depriving the benefit plan members of the health benefits that that they were contractually promised, and are further denying the benefit plan members the freedom to use the medical providers of their

choice.   HSH seeks payment of the claims pursuant to the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. and under relevant Texas state law causes of action, among other damages.

## II. PARTIES

2.      HSH is a limited liability company organized under the laws of the State of Texas with its principal place of business in the State of Texas.

3.      Aetna Life Insurance Co. ("Aetna") is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.  Aetna's agent for service of process is C T Corporation System, 1999 Bryan St., Suite 900, Dallas Texas 75201-3136.

4.      Defendant American Express Healthcare Reimbursement Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, American Express Company is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, American Express Company is a New York corporation with its corporate headquarters located in New York.  American Express Company's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5.      Defendant Anadarko Petroleum Corporation Medical Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Anadarko Petroleum Corporation is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Anadarko Petroleum Corporation is a Delaware corporation with its corporate headquarters located in Texas.  Anadarko Petroleum Corporation's registered agent for

service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

6.      Defendant Bechtel Medical and Dental Plan for Employees is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Bechtel Global Corporation is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Bechtel Global Corporation is a Delaware corporation with its corporate headquarters located in Virginia.  Bechtel Global Corporation's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

7.      Defendant BMC Software, Inc. Health Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, BMC Software, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, BMC Software, Inc. is a Delaware corporation with its corporate headquarters located in Texas.  BMC Software, Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

8.      Defendant Boomerang Tube, LLC Employee Benefits Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Boomerang Tube, LLC is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Boomerang Tube, LLC is a Delaware limited liability corporation with its corporate headquarters located in Missouri.  Boomerang Tube, LLC's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

9.      Defendant BP Consolidated Welfare Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, BP Corporation North America, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon

4

information and belief, BP Corporation North America, Inc. is an Indiana corporation with its corporate headquarters located in Texas.  BP Corporation North America, Inc.'s registered agent for service of process is Prentice Hall Corp. System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

10.     Defendant Entergy Corporation Companies' Employees' Welfare Benefit Trust is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Entergy Corporation is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Entergy Corporation is a Delaware corporation with its corporate headquarters located in Louisiana.   Service may be accomplished by serving Entergy Corporation's Chief Executive Officer, Leo P. Denault, at 639 Loyola Avenue, New Orleans, LA 70112.

11.     Defendant ExxonMobil Medical Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Exxon Mobil Corporation is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Exxon Mobil Corporation is a New York corporation with its corporate headquarters located in Texas.  Exxon Mobil Corporation's registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

12.     Defendant FirstGroup America, Inc. Health & Welfare Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, FirstGroup America, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, FirstGroup America, Inc. is a Florida corporation with its corporate headquarters

located in Ohio.  FirstGroup America, Inc.'s registered agent for service of process is CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

13.     Defendant Graham Packaging Company Group Medical Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Graham Packaging Co., L.P. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Graham Packaging Co., L.P. is a Delaware limited partnership with its corporate headquarters located in Pennsylvania.  Graham Packaging Co., L.P.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

14.     Defendant Harsco Choice Welfare Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Harsco Corporation is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Harsco Corporation is a Delaware corporation with its corporate headquarters located in Pennsylvania. Harsco Corporation's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

15.     Defendant HCA, Inc. Health & Welfare Benefits Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, HCA, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, HCA, Inc. is a Delaware corporation with its corporate headquarters located in Tennessee.  HCA, Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

16.     Defendant Home Depot Medical and Dental Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Home Depot USA,

Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Home Depot USA, Inc. is a Delaware corporation with its corporate headquarters located in Georgia.  Home Depot USA, Inc.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

17.     Defendant Lowe's Companies, Inc. Welfare Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Lowe's Companies, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Lowe's Companies, Inc. is a North Carolina corporation with its corporate headquarters located in North Carolina.   Lowe's Companies, Inc.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

18.     Defendant Lyondell Basell Group Welfare Benefits Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).   Upon information and belief, Lyondell Chemical Company is the plan sponsor and plan administrator of this ERISA Plan.   Upon information and belief, Lyondell Chemical Company is a Delaware corporation with its corporate headquarters located in Texas.   Lyondell Chemical Company's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

19.     Defendant Tyco International Health and Welfare Benefits Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).   Upon information and belief, Pentair Valves & Controls, Inc. is the plan sponsor and plan administrator of this ERISA Plan.   Upon information and belief, Pentair Valves & Controls, Inc. is a Minnesota corporation with its

corporate headquarters located in Minnesota. Pentair Valves & Controls, Inc.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

20.     Defendant SCI Welfare Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d). Upon information and belief, SCI Management, L.P. is the plan sponsor and plan administrator of this ERISA Plan. Upon information and belief, SCI Management, L.P. is a Delaware limited partnership with its corporate headquarters located in Texas. SCI Management, L.P.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

21.     Defendant The Dow Chemical Company Medical Care Program is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d). Upon information and belief, The Dow Chemical Company is the plan sponsor and plan administrator of this ERISA Plan. Upon information and belief, The Dow Chemical Company is a Delaware corporation with its corporate headquarters located in Michigan. The Dow Chemical Company's registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

22.     Defendant United Airlines Consolidated Welfare Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d). Upon information and belief, United Airlines, Inc. is the plan sponsor and plan administrator of this ERISA Plan. Upon information and belief, United Airlines, Inc. is a Delaware corporation with its corporate headquarters located in Illinois. United Airlines, Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

23.     Defendant UPS Health & Welfare Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, United Parcel Service of America, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, United Parcel Service of America, Inc. is an Ohio Corporation with its corporate headquarters located in Georgia.  United Parcel Service of America, Inc.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

24.     Defendant W. W. Grainger, Inc. Group Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, W. W. Grainger, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, W. W. Grainger, Inc. is an Illinois corporation with its corporate headquarters located in Illinois. W. W. Grainger, Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136..

25.     Defendant Wal-Mart Stores, Inc. Associates Health & Welfare Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Wal-Mart Stores, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Wal-Mart Stores, Inc. is a Delaware corporation with its corporate headquarters located in Arizona.  Wal-Mart Stores, Inc.'s registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136..

26.     Defendant Wood Group Management Services, Inc. Health Benefit Plan is an ERISA plan and is a proper defendant pursuant to ERISA § 502(d).  Upon information and belief, Wood Group Management Services, Inc. is the plan sponsor and plan administrator of this ERISA Plan.  Upon information and belief, Wood Group Management Services, Inc. is a Texas

corporation with its corporate headquarters located in Texas.  Wood Group Management Services, Inc.'s registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## III.  JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 1132(e) (ERISA), and 29 U.S.C. § 1367 (supplemental jurisdiction).

28.     Defendants are subject to the personal jurisdiction of Texas courts because they transact business in Texas and because they have sufficient minimum contacts with Texas supporting the exercise of personal jurisdiction.

29.     Venue is appropriate in this District under 28 U.S.C. § 1391, because Defendants conduct a substantial amount of business in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV. FACTUAL BACKGROUND

**About HSH**

30.     HSH is a multi-specialty hospital, duly licensed by the Texas Department of State Health Services.  Established in 2010, HSH is located in the Houston suburb of Humble, Texas. HSH is within the premier group of multi-specialty hospitals in Texas, providing a safe surgical environment and employing state-of-the-art equipment and expert staff.  For example:

- HSH is the exclusive provider in the north Houston region of the Mazor Renaissance™ Robotics System, which is recognized to be the most advanced robotic spine surgery system in the world today;

- HSH cares for each patient with two fully-dedicated registered nurses, and maintains a higher nurse-to-patient ratio than most other hospitals in the Houston area;

- HSH has a lower infection rate than other hospitals, as well as fewer inpatient days and quicker discharge and return-to-work rates.

These facts have routinely earned HSH a high satisfaction rate of over 95%, as measured by Press Garney.[1]  This places HSH within the top five hospitals in Houston.

**The Aetna Plans Promise That They Will Reimburse For Medical Treatment Provided At Out-Of-Network Facilities Such As HSH**

31.    Aetna is one of the nation's largest health insurers. It underwrites and insures health benefit plans for individuals and other entities—such as private employer-sponsored benefit plans (fully-insured plans).  It also contracts with entities that provide health benefit plans—such as private employer-sponsored benefit plans—in order to provide administrative services (self-insured plans).  Most of the health benefit plans Aetna insures or administers ("Aetna Plans") are employer-sponsored and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Irrespective of whether a plan is fully-insured or self-insured, Aetna is responsible for receiving, processing, and investigating claims under the Aetna Plans and for effectuating any resulting benefit payments.  As a result, Aetna is a fiduciary with respect to the Aetna Plans governed by ERISA, and is a proper ERISA defendant.

32.    Some of the Aetna Plans that Aetna insures or administers are governmental plans that are not subject to regulation under ERISA.  As with the ERISA plans, Aetna is responsible for receiving, processing, and investigating claims under these non-ERISA, governmental plans and for effectuating any resulting benefit payments.

---

[1] Press Ganey is the health care industry's recognized leader in patient satisfaction consulting.  It works with more than 10,000 health care organizations nationwide, including 50% of all hospitals in the United States.

33.     Under the terms of the Aetna Plans, Aetna is obligated to make benefit payments from its own assets (in the case of fully-insured Aetna Plans) or the assets of the Aetna Plans themselves (in the case of self-insured Aetna Plans) when a participant in one of those plans (an "Aetna Member") obtains healthcare treatment that is covered by the terms of an Aetna Plan (a "Covered Charge").

34.     The benefits available under the Aetna Plans differ depending on whether the services are provided by an "in-network" facility or by an "out-of-network" facility.  An in-network facility is a facility that has entered into a contractual agreement with Aetna and has agreed to accept lower than usual and customary or reasonable rates in exchange for the opportunity to provide services to the vast number of Aetna Members.

35.     An out-of-network facility has no such contractual agreement with Aetna.  Under the terms of the typical Aetna Plan containing an out-of-network option, the Aetna Plan promises to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, of an out-of-network facility.  Aetna represents that this amount is calculated by reference to the prevailing charges in the geographic area where the out-of-network facility is located.

**HSH Is An Out-Of-Network Facility Under The Aetna Plans**

36.     HSH, as an out-of-network hospital, has no contract with Aetna.  Aetna Members, however, have directly or indirectly paid higher (or been charged) costs for Aetna Plans with an out-of-network option in order to have the freedom to choose an out-of-network facility like HSH.  HSH's patients are contractually entitled to reimbursement from Aetna of fees for medical treatment provided at HSH pursuant to the terms of the Aetna Plans.

37.     Whenever a surgery or other medical treatment on an Aetna Member is performed at HSH, the Aetna Member assigns their right to benefits under the Aetna Plans to HSH, and

12

authorizes HSH to pursue any claim, right, or cause of action that the Aetna Member may have under an Aetna Plan, including internal appeals and litigation.

38.     HSH also enters into agreements with Aetna Members in advance of treatment whereby the Aetna Members agree to be liable to HSH for the full amount of any bill rendered for the medical treatment provided at HSH.  Thus, while claims are submitted to Aetna seeking payment for the medical treatment provided at HSH, the Aetna Members are contractually liable to HSH for any amounts not paid by Aetna.

39.     Prior to admission and treatment, HSH's billing agent verifies and, if necessary, pre-certifies coverage, eligibility, and benefit levels for the Aetna Member.  In each case where verification and pre-certification are sought, the billing agent informs Aetna of the specific treatment to be provided to the Aetna Member, the facility where the treatment is to be performed (HSH), and the identity of the patient.  In response, Aetna informs the billing agent whether the patient seeking medical treatment has active coverage and benefits for the procedure to be performed at HSH.  Because of the importance of this coverage information, and because HSH does not have access to this information, Aetna owes a duty to reasonably and adequately investigate the existence of insurance coverage and benefits and to convey accurate information.

40.     Medical treatment has routinely been provided at HSH to Aetna Members in reliance on Aetna's representations regarding coverage and benefits.  In the absence of Aetna's representations that the medical treatments to be provided were Covered Charges, these medical treatments would not have been provided to the Aetna Members at HSH.

**Virtually All Claims Submitted Under Aetna Plans After October 25, 2013 Have Been Wrongfully Denied**

41.     Since approximately October 25, 2013, there has been a blanket denial of virtually all claims submitted under Aetna Plans for hospital services provided at HSH, totaling more than

100 claims.  Since that date, in response to these claims, Aetna's "explanations of benefits" ("EOBs")[2] simply state that the claim is an "improper claim submittal" and that the claim is denied.  Aetna's EOBs do not specify in what manner the claim is improper or why reimbursement is not proper under the terms of the Aetna Plan at issue.  Aetna's EOBs do not specifically identify the plan provision on which the denial is based.  Furthermore, Aetna's EOBs do not identify usual, customary, and reasonable rate information or specify the amount by which the submitted charges exceed that rate.

42.     As set forth more fully below, the medical treatment for which HSH has been paid nothing include, for example:

- a complex reconstructive foot surgery performed on 12/12/13 that required two days of intensive in-patient recovery, and required the installation of more than $50,000 of implants purchased by HSH from third-party suppliers;

- a complex spinal laminectomy and fusion performed on 12/19/13 that required the installation of more than $50,000 of implants purchased by HSH from third-party suppliers; and

- a total knee replacement performed on 11/19/13 that required overnight, in-patient recovery, and required the installation of a $10,000 joint implant device purchased by HSH from a third-party supplier.

43.     The refusal to reimburse claims for Covered Charges is part of a concerted effort by Aetna and the other Defendants to coerce providers into accepting less than the reasonable and customary amounts for use of out-of-network facilities.

---

[2] Known as an "EOB," an explanation of benefits summarizes Aetna's adjudication of each claim submitted (*i.e.*, whether the claim was approved or denied) and the value, if any, of the corresponding covered benefit.  At the same time, Aetna sends the Aetna Member a corresponding explanation of benefits, which similarly states how the claim was adjudicated and the value of the corresponding covered benefit, if any, that was paid by Aetna.

**HSH Is Entitled To Reimbursement Under The Aetna Plans**

44.     There is no provision in any of the Aetna Plans that permits a refusal to make benefit payments for the medical treatments provided to Aetna Members at HSH.  In fact, the physicians who performed the medical procedures at issue, and the anesthesiologists who provided anesthesia have routinely been reimbursed under the Aetna Plans.  HSH, however, has not been reimbursed for hospital services provided at HSH, even though coverage for the procedures was verified in advance.  During these verification and pre-certification calls, Aetna, on behalf of the Aetna Plans, represented that the procedures—including the charges for hospital services—were Covered Charges.

45.     The refusal to reimburse virtually all claims for the medical treatment provided at HSH deprives the Aetna Members of the benefits they have been promised.  As noted earlier herein, the Aetna Members directly or indirectly paid (or were charged) higher costs for plans with out-of-network options, in exchange for the freedom to choose out-of-network facilities like HSH.

46.     The refusal to pay claims for medical treatments provided at HSH also exposes the Aetna Members to financial liability.  Because no payment has been made for the facility fees that are Covered Charges, Aetna Members remain liable to HSH for the full fee associated the medical treatment provided at HSH.  Since October 25, 2013, Aetna has sent EOBs to HSH and the Aetna Member that instruct HSH to "not bill the Member" for the amount not paid by Aetna.  Nevertheless, the Aetna Members will remain liable for the full amount of fees attributable to services provided at HSH, if the claims at issue are not paid.

47.     The following are examples of some of the more than 100 Aetna Member claims that have been wrongfully denied:

**Aetna Member 1 - American Express Healthcare Reimbursement Plan**

48.     Aetna Member 1 is a member of the American Express Healthcare Reimbursement Plan, sponsored by American Express Company.

49.     The American Express Healthcare Reimbursement Plan is a self-funded plan, governed by ERISA.  Upon information and belief, American Express Company is designated by the American Express Healthcare Reimbursement Plan as the plan administrator.   While American Express Company has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, American Express Company retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, American Express Company is a proper ERISA defendant.

50.     On 12/3/2013, Aetna Member 1 was admitted to HSH for sinus surgery.  Before performing this medically-necessary procedure, the following administrative process was followed:

   a. HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 1 had coverage for the proposed procedures under the American Express Healthcare Reimbursement Plan.

   b. HSH received a signed assignment of benefits from Aetna Member 1.

   c. HSH billed Aetna Member 1 an initial payment for the proposed procedures.

51.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 1 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the American Express Healthcare Reimbursement Plan and American Express Company.

52.     Aetna's EOB, processed on 12/23/2013, states that the claim for Aetna Member 1 was denied as an "improper claim submittal."   Aetna, the American Express Healthcare Reimbursement Plan, and American Express Company failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

53.     Aetna, the American Express Healthcare Reimbursement Plan, and American Express Company continue to refuse to pay for the medical procedures received at HSH by Aetna Member 1, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 2 – Anadarko Petroleum Corporation Medical Plan**

54.     Aetna Member 2 is a member of the Anadarko Petroleum Corporation Medical Plan, sponsored by Anadarko Petroleum Corporation.

55.     The Anadarko Petroleum Corporation Medical Plan is a self-funded plan, governed by ERISA.   Upon information and belief, Anadarko Petroleum Corporation is designated by the Anadarko Petroleum Corporation Medical Plan as the plan administrator. While Anadarko Petroleum Corporation has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Anadarko Petroleum Corporation

17

retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Anadarko Petroleum Corporation is a proper ERISA defendant.

56.     On 12/12/2013, Aetna Member 2 was admitted to HSH for a pain stimulator implant procedure.  Before performing this medically-necessary procedure, the following administrative process was followed:

     a.   HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 2 had coverage for the proposed procedures under the Anadarko Petroleum Corporation Medical Plan.

     b.   HSH received a signed assignment of benefits from Aetna Member 2.

     c.   HSH billed Aetna Member 2 an initial payment for the proposed procedures.

57.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 2 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Anadarko Petroleum Corporation Medical Plan and Anadarko Petroleum Corporation.

58.     Aetna's EOB, processed on 1/20/2014, states that the claim for Aetna Member 2 was denied as an "improper claim submittal."  Aetna, the Anadarko Petroleum Corporation Medical Plan, and Anadarko Petroleum Corporation failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled

18

to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

59.     Aetna, the Anadarko Petroleum Corporation Medical Plan, and Anadarko Petroleum Corporation continue to refuse to pay for the medical procedures received at HSH by Aetna Member 2, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 3 – Bechtel Medical and Dental Plan for Employees**

60.     Aetna Member 3 is a member of the Bechtel Medical and Dental Plan for Employees, sponsored by Bechtel Global Corporation.

61.     The Bechtel Medical and Dental Plan for Employees is a self-funded plan, governed by ERISA.  Upon information and belief, Bechtel Global Corporation is designated by the Bechtel Medical and Dental Plan for Employees as the plan administrator.  While Bechtel Global Corporation has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Bechtel Global Corporation retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment. As a result, Bechtel Global Corporation is a proper ERISA defendant.

62.     On 7/2/2014, Aetna Member 3 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

> a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 3 had coverage for the proposed procedures under the Bechtel Medical and Dental Plan for Employees.
>
> b.  HSH received a signed assignment of benefits from Aetna Member 3.

  c.  HSH billed Aetna Member 3 an initial payment for the proposed procedures.

63.  After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 3 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Bechtel Medical and Dental Plan for Employees and Bechtel Global Corporation.

64.  Aetna's EOB, processed on 8/11/2014, states that the claim for Aetna Member 3 was denied as an "improper claim submittal."  Aetna, the Bechtel Medical and Dental Plan for Employees, and Bechtel Global Corporation failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

65.  Aetna, the Bechtel Medical and Dental Plan for Employees, and Bechtel Global Corporation continue to refuse to pay for the medical procedures received at HSH by Aetna Member 3, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 4 – BMC Software, Inc. Health Benefit Plan**

66.     Aetna Member 4 is a member of the BMC Software, Inc. Health Benefit Plan, sponsored by BMC Software, Inc.

67.     The BMC Software, Inc. Health Benefit Plan is a self-funded plan, governed by ERISA.  Upon information and belief, BMC Software, Inc. is designated by the BMC Software, Inc. Health Benefit Plan as the plan administrator.  While BMC Software, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, BMC Software, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, BMC Software, Inc. is a proper ERISA defendant.

68.     On 10/22/2013, Aetna Member 4 was admitted to HSH for shoulder surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

    a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 4 had coverage for the proposed procedures under the BMC Software, Inc. Health Benefit Plan.

    b.  HSH received a signed assignment of benefits from Aetna Member 4.

    c.  HSH billed Aetna Member 4 an initial payment for the proposed procedures.

69.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 4 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the BMC Software, Inc. Health Benefit Plan and BMC Software, Inc.

70.     Aetna's EOB, processed on 12/6/2013, states that the claim for Aetna Member 4 was denied as an "improper claim submittal."  Aetna, the BMC Software, Inc. Health Benefit

Plan, and BMC Software, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

71.     Aetna, the BMC Software, Inc. Health Benefit Plan, and BMC Software, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 4, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 5 – Boomerang Tube, LLC Employee Benefits Plan**

72.     Aetna Member 5 is a member of the Boomerang Tube, LLC Employee Benefits Plan, sponsored by Boomerang Tube, LLC.

73.     The Boomerang Tube, LLC Employee Benefits Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Boomerang Tube, LLC is designated by the Boomerang Tube, LLC Employee Benefits Plan as the plan administrator.  While Boomerang Tube, LLC has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Boomerang Tube, LLC retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Boomerang Tube, LLC is a proper ERISA defendant.

74.     On 10/21/2013, Aetna Member 5 was admitted to HSH for a cardiac catheterization procedure with stent placement.   Before performing this medically-necessary procedure, the following administrative process was followed:

> a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 5 had coverage for the proposed procedures under the Boomerang Tube, LLC Employee Benefits Plan.
>
> b.  HSH received a signed assignment of benefits from Aetna Member 5.
>
> c.  HSH billed Aetna Member 5 an initial payment for the proposed procedures.

75.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 5 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Boomerang Tube, LLC Employee Benefits Plan and Boomerang Tube, LLC.

76.     Aetna's EOB, processed on 12/9/2013, states that the claim for Aetna Member 5 was denied as an "improper claim submittal."   Aetna, the Boomerang Tube, LLC Employee Benefits Plan, and Boomerang Tube, LLC failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

77.     Aetna, the Boomerang Tube, LLC Employee Benefits Plan, and Boomerang Tube, LLC continue to refuse to pay for the medical procedures received at HSH by Aetna Member 5, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 6 – BP Consolidated Welfare Benefit Plan**

78.     Aetna Member 6 is a member of the BP Consolidated Welfare Benefit Plan, sponsored by BP Corporation North America, Inc.

79.     The BP Consolidated Welfare Benefit Plan is a self-funded plan, governed by ERISA.  Upon information and belief, BP Corporation North America, Inc. is designated by the BP Consolidated Welfare Benefit Plan as the plan administrator.  While BP Corporation North America, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, BP Corporation North America, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment. As a result, BP Corporation North America, Inc.  is a proper ERISA defendant.

80.     On 10/25/2013, Aetna Member 6 was admitted to HSH for an interventional pain management procedure.  Before performing this medically-necessary procedure, the following administrative process was followed:

      a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 6 had coverage for the proposed procedures under the BP Consolidated Welfare Benefit Plan.

      b.  HSH received a signed assignment of benefits from Aetna Member 6.

      c.  HSH billed Aetna Member 6 an initial payment for the proposed procedures.

81.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 6 at HSH.   After the procedure was

completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the BP Consolidated Welfare Benefit Plan and BP Corporation North America, Inc.

82.     Aetna's EOB, processed on 12/9/2013, states that the claim for Aetna Member 6 was denied as an "improper claim submittal."  Aetna, the BP Consolidated Welfare Benefit Plan, and BP Corporation North America, Inc.  failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

83.     Aetna, the BP Consolidated Welfare Benefit Plan, and BP Corporation North America, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 6, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 7 – Entergy Corporation Companies' Employees' Welfare Benefit Trust**

84.     Aetna Member 7 is a member of the Entergy Corporation Companies' Employees' Welfare Benefit Trust, sponsored by Entergy Corporation.

85.     The Entergy Corporation Companies' Employees' Welfare Benefit Trust is a self-funded plan, governed by ERISA.  Upon information and belief, Entergy Corporation is designated by the Entergy Corporation Companies' Employees' Welfare Benefit Trust as the plan administrator.  While Entergy Corporation has delegated to Aetna authority to make receive,

process, and investigate claims, upon information and belief, Entergy Corporation retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Entergy Corporation is a proper ERISA defendant.

86.     On 9/4/2013, Aetna Member 7 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

       a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 7 had coverage for the proposed procedures under the Entergy Corporation Companies' Employees' Welfare Benefit Trust.

       b.  HSH received a signed assignment of benefits from Aetna Member 7.

       c.  HSH billed Aetna Member 7 an initial payment for the proposed procedures.

87.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 7 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Entergy Corporation Companies' Employees' Welfare Benefit Trust and Entergy Corporation.

88.     Aetna's EOB, processed on 12/19/2013, states that the claim for Aetna Member 7 was denied as an "improper claim submittal."  Aetna, the Entergy Corporation Companies' Employees' Welfare Benefit Trust, and Entergy Corporation failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they

are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

89.     Aetna, the Entergy Corporation Companies' Employees' Welfare Benefit Trust, and Entergy Corporation continue to refuse to pay for the medical procedures received at HSH by Aetna Member 7, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 8 – ExxonMobil Medical Plan**

90.     Aetna Member 8 is a member of the ExxonMobil Medical Plan, sponsored by Exxon Mobil Corporation.

91.     The ExxonMobil Medical Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Exxon Mobil Corporation is designated by the ExxonMobil Medical Plan as the plan administrator.  While Exxon Mobil Corporation has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Exxon Mobil Corporation retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Exxon Mobil Corporation is a proper ERISA defendant.

92.     On 8/9/2013, Aetna Member 8 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

> a.   HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 8 had coverage for the proposed procedures under the ExxonMobil Medical Plan.
>
> b.   HSH received a signed assignment of benefits from Aetna Member 8.

c. HSH billed Aetna Member 8 an initial payment for the proposed procedures.

93.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 8 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the ExxonMobil Medical Plan and Exxon Mobil Corporation.

94.     Aetna's EOB, processed on 1/21/2014, states that the claim for Aetna Member 8 was denied as an "improper claim submittal."  Aetna, the ExxonMobil Medical Plan, and Exxon Mobil Corporation failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

95.     Aetna, the ExxonMobil Medical Plan, and Exxon Mobil Corporation continue to refuse to pay for the medical procedures received at HSH by Aetna Member 8, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 9 – FirstGroup America, Inc. Health & Welfare Plan**

96.     Aetna Member 9 is a member of the FirstGroup America, Inc. Health & Welfare Plan, sponsored by FirstGroup America, Inc.

28

97.     The FirstGroup America, Inc. Health & Welfare Plan is a self-funded plan, governed by ERISA.  Upon information and belief, by FirstGroup America, Inc. is designated by the FirstGroup America, Inc. Health & Welfare Plan as the plan administrator.   While by FirstGroup America, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, by FirstGroup America, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment. As a result, by FirstGroup America, Inc. is a proper ERISA defendant.

98.     On 12/24/2013, Aetna Member 9 was admitted to HSH for an interventional pain management prcoedure.  Before performing this medically-necessary procedure, the following administrative process was followed:

> a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 9 had coverage for the proposed procedures under the FirstGroup America, Inc. Health & Welfare Plan.
>
> b.  HSH received a signed assignment of benefits from Aetna Member 9.
>
> c.  HSH billed Aetna Member 9 an initial payment for the proposed procedures.

99.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 9 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the FirstGroup America, Inc. Health & Welfare Plan and by FirstGroup America, Inc.

100.     Aetna's EOB, processed on 1/27/2014, states that the claim for Aetna Member 9 was denied as an "improper claim submittal."   Aetna, the FirstGroup America, Inc. Health & Welfare Plan, and by FirstGroup America, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to

provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

101.    Aetna, the FirstGroup America, Inc. Health & Welfare Plan, and by FirstGroup America, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 9, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 10 – Graham Packaging Company Group Medical Plan**

102.    Aetna Member 10 is a member of the Graham Packaging Company Group Medical Plan, sponsored by Graham Packaging Co., L.P.

103.    The Graham Packaging Company Group Medical Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Graham Packaging Co., L.P. is designated by the Graham Packaging Company Group Medical Plan as the plan administrator.  While Graham Packaging Co., L.P. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Graham Packaging Co., L.P. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment. As a result, Graham Packaging Co., L.P. is a proper ERISA defendant.

104.    On 12/12/2013, Aetna Member 10 was admitted to HSH for a pain stimulator implant procedure.   Before performing this medically-necessary procedure, the following administrative process was followed:

> a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 10 had coverage for the proposed procedures under the Graham Packaging Company Group Medical Plan.
>
> b.  HSH received a signed assignment of benefits from Aetna Member 10.
>
> c.  HSH billed Aetna Member 10 an initial payment for the proposed procedures.

105.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 10 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Graham Packaging Company Group Medical Plan and Graham Packaging Co., L.P.

106.    Aetna's EOB, processed on 1/20/2014, states that the claim for Aetna Member 10 was denied as an "improper claim submittal."   Aetna, the Graham Packaging Company Group Medical Plan, and Graham Packaging Co., L.P. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure

31

available, or a description of all required information to be given in connection with that procedure.

107.    Aetna, the Graham Packaging Company Group Medical Plan, and Graham Packaging Co., L.P. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 10, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 11 – Harsco Choice Welfare Benefit Plan**

108.    Aetna Member 11 is a member of the Harsco Choice Welfare Benefit Plan, sponsored by Harsco Corporation.

109.    The Harsco Choice Welfare Benefit Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Harsco Corporation is designated by the Harsco Choice Welfare Benefit Plan as the plan administrator.  While Harsco Corporation has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Harsco Corporation retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Harsco Corporation is a proper ERISA defendant.

110.    On 2/20/2014, Aetna Member 11 was admitted to HSH for podiatry surgery. Before performing this medically-necessary procedure, the following administrative process was followed:

      a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 11 had coverage for the proposed procedures under the Harsco Choice Welfare Benefit Plan.

      b.  HSH received a signed assignment of benefits from Aetna Member 11.

      c.  HSH billed Aetna Member 11 an initial payment for the proposed procedures.

111.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 11 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Harsco Choice Welfare Benefit Plan and Harsco Corporation.

112.     Aetna's EOB, processed on 3/31/2014, states that the claim for Aetna Member 11 was denied as an "improper claim submittal."   Aetna, the Harsco Choice Welfare Benefit Plan, and Harsco Corporation failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

113.     Aetna, the Harsco Choice Welfare Benefit Plan, and Harsco Corporation continue to refuse to pay for the medical procedures received at HSH by Aetna Member 11, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 12 – HCA, Inc. Health & Welfare Benefits Plan**

114.     Aetna Member 12 is a member of the HCA, Inc. Health & Welfare Benefits Plan, sponsored by HCA, Inc.

115.     The HCA, Inc. Health & Welfare Benefits Plan is a self-funded plan, governed by ERISA.   Upon information and belief, HCA, Inc. is designated by the HCA, Inc. Health &

Welfare Benefits Plan as the plan administrator.  While HCA, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, HCA, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, HCA, Inc. is a proper ERISA defendant.

116.    On 6/3/2013, Aetna Member 12 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

    a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 12 had coverage for the proposed procedures under the HCA, Inc. Health & Welfare Benefits Plan.

    b.  HSH received a signed assignment of benefits from Aetna Member 12.

    c.  HSH billed Aetna Member 12 an initial payment for the proposed procedures.

117.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 12 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the HCA, Inc. Health & Welfare Benefits Plan and HCA, Inc.

118.    Aetna's EOB, processed on 12/11/2013, states that the claim for Aetna Member 12 was denied as an "improper claim submittal."  Aetna, the HCA, Inc. Health & Welfare Benefits Plan, and HCA, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all

documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

119.    Aetna, the HCA, Inc. Health & Welfare Benefits Plan, and HCA, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 12, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 13 – Home Depot Medical and Dental Plan**

120.    Aetna Member 13 is a member of the Home Depot Medical and Dental Plan, sponsored by Home Depot USA, Inc.

121.    The Home Depot Medical and Dental Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Home Depot USA, Inc. is designated by the Home Depot Medical and Dental Plan as the plan administrator.  While Home Depot USA, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Home Depot USA, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Home Depot USA, Inc. is a proper ERISA defendant.

122.    On 12/5/2013, Aetna Member 13 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

      a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 13 had coverage for the proposed procedures under the Home Depot Medical and Dental Plan.

      b.  HSH received a signed assignment of benefits from Aetna Member 13.

      c.  HSH billed Aetna Member 13 an initial payment for the proposed procedures.

123. After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 13 at HSH. After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Home Depot Medical and Dental Plan and Home Depot USA, Inc.

124. Aetna's EOB, processed on 1/16/2014, states that the claim for Aetna Member 13 was denied as an "improper claim submittal." Aetna, the Home Depot Medical and Dental Plan, and Home Depot USA, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

125. Aetna, the Home Depot Medical and Dental Plan, and Home Depot USA, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 13, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 14 – Lowe's Companies, Inc. Welfare Plan**

126. Aetna Member 14 is a member of the Lowe's Companies, Inc. Welfare Plan, sponsored by Lowe's Companies, Inc.

127. The Lowe's Companies, Inc. Welfare Plan is a self-funded plan, governed by ERISA. Upon information and belief, Lowe's Companies, Inc. is designated by the Lowe's

Companies, Inc. Welfare Plan as the plan administrator.  While Lowe's Companies, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Lowe's Companies, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Lowe's Companies, Inc. is a proper ERISA defendant.

128.    On 11/5/2013, Aetna Member 14 was admitted to HSH for sinus surgery.  Before performing this medically-necessary procedure, the following administrative process was followed:

     a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 14 had coverage for the proposed procedures under the Lowe's Companies, Inc. Welfare Plan.

     b.  HSH received a signed assignment of benefits from Aetna Member 14.

     c.  HSH billed Aetna Member 14 an initial payment for the proposed procedures.

129.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 14 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Lowe's Companies, Inc. Welfare Plan and Lowe's Companies, Inc.

130.    Aetna's EOB, processed on 12/17/2013, states that the claim for Aetna Member 14 was denied as an "improper claim submittal."  Aetna, the Lowe's Companies, Inc. Welfare Plan, and Lowe's Companies, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment

code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

131.    Aetna, the Lowe's Companies, Inc. Welfare Plan, and Lowe's Companies, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 14, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 15 – Lyondell Basell Group Welfare Benefits Plan**

132.    Aetna Member 15 is a member of the Lyondell Basell Group Welfare Benefits Plan, sponsored by Lyondell Chemical Company.

133.    The Lyondell Basell Group Welfare Benefits Plan is a self-funded plan, governed by ERISA.   Upon information and belief, Lyondell Chemical Company is designated by the Lyondell Basell Group Welfare Benefits Plan as the plan administrator.   While Lyondell Chemical Company has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Lyondell Chemical Company retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment. As a result, Lyondell Chemical Company is a proper ERISA defendant.

134.    On 11/5/2013, Aetna Member 15 was admitted to HSH for shoulder surgery with implants.   Before performing this medically-necessary procedure, the following administrative process was followed:

> a.   HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 15 had coverage for the proposed procedures under the Lyondell Basell Group Welfare Benefits Plan.
>
> b.   HSH received a signed assignment of benefits from Aetna Member 15.

    c.  HSH billed Aetna Member 15 an initial payment for the proposed procedures.

135.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 15 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Lyondell Basell Group Welfare Benefits Plan and Lyondell Chemical Company.

136.    Aetna's EOB, processed on 12/5/2013, states that the claim for Aetna Member 15 was denied as an "improper claim submittal."  Aetna, the Lyondell Basell Group Welfare Benefits Plan, and Lyondell Chemical Company failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

137.    Aetna, the Lyondell Basell Group Welfare Benefits Plan, and Lyondell Chemical Company continue to refuse to pay for the medical procedures received at HSH by Aetna Member 15, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 16 – Tyco International Health and Welfare Benefits Plan**

138.    Aetna Member 16 is a member of the Tyco International Health and Welfare Benefits Plan, sponsored by Pentair Valves & Controls, Inc.

139.     The Tyco International Health and Welfare Benefits Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Pentair Valves & Controls, Inc. is designated by the Tyco International Health and Welfare Benefits Plan as the plan administrator.  While Pentair Valves & Controls, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Pentair Valves & Controls, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Pentair Valves & Controls, Inc. is a proper ERISA defendant.

140.     On 7/18/2013, Aetna Member 16 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

    a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 16 had coverage for the proposed procedures under the Tyco International Health and Welfare Benefits Plan.

    b.  HSH received a signed assignment of benefits from Aetna Member 16.

    c.  HSH billed Aetna Member 16 an initial payment for the proposed procedures.

141.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 16 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Tyco International Health and Welfare Benefits Plan and Pentair Valves & Controls, Inc.

142.     Aetna's EOB, processed on 12/23/2013, states that the claim for Aetna Member 16 was denied as an "improper claim submittal."  Aetna, the Tyco International Health and Welfare Benefits Plan, and Pentair Valves & Controls, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims;

refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

143.    Aetna, the Tyco International Health and Welfare Benefits Plan, and Pentair Valves & Controls, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 16, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 17 – SCI Welfare Benefit Plan**

144.    Aetna Member 17 is a member of the SCI Welfare Benefit Plan, sponsored by SCI Management, L.P.

145.    The SCI Welfare Benefit Plan is a self-funded plan, governed by ERISA.  Upon information and belief, SCI Management, L.P. is designated by the SCI Welfare Benefit Plan as the plan administrator.  While SCI Management, L.P. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, SCI Management, L.P. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, SCI Management, L.P. is a proper ERISA defendant.

146.    On 11/12/2013, Aetna Member 17 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

41

a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 17 had coverage for the proposed procedures under the SCI Welfare Benefit Plan.

b.  HSH received a signed assignment of benefits from Aetna Member 17.

c.  HSH billed Aetna Member 17 an initial payment for the proposed procedures.

147.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 17 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the SCI Welfare Benefit Plan and SCI Management, L.P.

148.    Aetna's EOB, processed on 12/9/2013, states that the claim for Aetna Member 17 was denied as an "improper claim submittal."   Aetna, the SCI Welfare Benefit Plan, and SCI Management, L.P. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

149.    Aetna, the SCI Welfare Benefit Plan, and SCI Management, L.P. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 17, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 18 – The Dow Chemical Company Medical Care Program**

150.    Aetna Member 18 is a member of the The Dow Chemical Company Medical Care Program, sponsored by The Dow Chemical Company.

151.    The The Dow Chemical Company Medical Care Program is a self-funded plan, governed by ERISA.  Upon information and belief, The Dow Chemical Company is designated by the The Dow Chemical Company Medical Care Program as the plan administrator.  While The Dow Chemical Company has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, The Dow Chemical Company retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, The Dow Chemical Company is a proper ERISA defendant.

152.    On 4/14/2013, Aetna Member 18 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

> a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 18 had coverage for the proposed procedures under the The Dow Chemical Company Medical Care Program.

> b.  HSH received a signed assignment of benefits from Aetna Member 18.

> c.  HSH billed Aetna Member 18 an initial payment for the proposed procedures.

153.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 18 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the The Dow Chemical Company Medical Care Program and The Dow Chemical Company.

154.    Aetna's EOB, processed on 4/3/2014, states that the claim for Aetna Member 18 was denied as an "improper claim submittal."  Aetna, the The Dow Chemical Company Medical Care Program, and The Dow Chemical Company failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

155.    Aetna, the The Dow Chemical Company Medical Care Program, and The Dow Chemical Company continue to refuse to pay for the medical procedures received at HSH by Aetna Member 18, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 19 – United Airlines Consolidated Welfare Benefit Plan**

156.    Aetna Member 19 is a member of the United Airlines Consolidated Welfare Benefit Plan, sponsored by United Airlines, Inc.

157.    The United Airlines Consolidated Welfare Benefit Plan is a self-funded plan, governed by ERISA.  Upon information and belief, United Airlines, Inc. is designated by the United Airlines Consolidated Welfare Benefit Plan as the plan administrator.  While United Airlines, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, United Airlines, Inc. retains ultimate fiduciary authority,

responsibility, and control over plan administration, including coverage and payment.  As a result, United Airlines, Inc. is a proper ERISA defendant.

158.    On 4/9/2013, Aetna Member 19 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

      a.  HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 19 had coverage for the proposed procedures under the United Airlines Consolidated Welfare Benefit Plan.

      b.  HSH received a signed assignment of benefits from Aetna Member 19.

      c.  HSH billed Aetna Member 19 an initial payment for the proposed procedures.

159.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 19 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the United Airlines Consolidated Welfare Benefit Plan and United Airlines, Inc.

160.    Aetna's EOB, processed on 12/9/2013, states that the claim for Aetna Member 19 was denied as an "improper claim submittal."  Aetna, the United Airlines Consolidated Welfare Benefit Plan, and United Airlines, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and

refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

161. Aetna, the United Airlines Consolidated Welfare Benefit Plan, and United Airlines, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 19, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 20 – UPS Health & Welfare Plan**

162. Aetna Member 20 is a member of the UPS Health & Welfare Plan, sponsored by United Parcel Service of America, Inc.

163. The UPS Health & Welfare Plan is a self-funded plan, governed by ERISA. Upon information and belief, United Parcel Service of America, Inc. is designated by the UPS Health & Welfare Plan as the plan administrator. While United Parcel Service of America, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, United Parcel Service of America, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment. As a result, United Parcel Service of America, Inc. is a proper ERISA defendant.

164. On 12/12/2013, Aetna Member 20 was admitted to HSH for podiatry surgery with implants. Before performing this medically-necessary procedure, the following administrative process was followed:

> a. HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 20 had coverage for the proposed procedures under the UPS Health & Welfare Plan.
>
> b. HSH received a signed assignment of benefits from Aetna Member 20.
>
> c. HSH billed Aetna Member 20 an initial payment for the proposed procedures.

165.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 20 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the UPS Health & Welfare Plan and United Parcel Service of America, Inc.

166.    Aetna's EOB, processed on 2/20/2014, states that the claim for Aetna Member 20 was denied as an "improper claim submittal."   Aetna, the UPS Health & Welfare Plan, and United Parcel Service of America, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

167.    Aetna, the UPS Health & Welfare Plan, and United Parcel Service of America, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 20, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 21 – W. W. Grainger, Inc. Group Benefit Plan**

168.    Aetna Member 21 is a member of the W. W. Grainger, Inc. Group Benefit Plan, sponsored by W. W. Grainger, Inc.

169.    The W. W. Grainger, Inc. Group Benefit Plan is a self-funded plan, governed by ERISA.   Upon information and belief, W. W. Grainger, Inc. is designated by the W. W.

47

Grainger, Inc. Group Benefit Plan as the plan administrator.  While W. W. Grainger, Inc. has

delegated to Aetna authority to make receive, process, and investigate claims, upon information and

belief, W. W. Grainger, Inc. retains ultimate fiduciary authority, responsibility, and control over

plan administration, including coverage and payment.  As a result, W. W. Grainger, Inc. is a

proper ERISA defendant.

170.    On 11/8/2013, Aetna Member 21 was admitted to HSH for sinus surgery.  Before

performing this medically-necessary procedure, the following administrative process was

followed:

  a.  HSH's billing agent contacted Aetna and received verification from Aetna
      that Aetna Member 21 had coverage for the proposed procedures under
      the W. W. Grainger, Inc. Group Benefit Plan.

  b.  HSH received a signed assignment of benefits from Aetna Member 21.

  c.  HSH billed Aetna Member 21 an initial payment for the proposed
      procedures.

171.    After receiving and relying upon Aetna's verification of coverage, the procedure

described above was performed on Aetna Member 21 at HSH.  After the procedure was

completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna

on behalf of the W. W. Grainger, Inc. Group Benefit Plan and W. W. Grainger, Inc.

172.    Aetna's EOB, processed on 12/11/2013, states that the claim for Aetna Member

21 was denied as an "improper claim submittal."  Aetna, the W. W. Grainger, Inc. Group Benefit

Plan, and W. W. Grainger, Inc. failed to comply with ERISA by, among other things, refusing to

provide the specific reason or reasons for the denial of claims; refusing to provide the specific

plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline

or protocol relied upon in making the decision to deny claims; refusing to describe any additional

material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment

code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

173.   Aetna, the W. W. Grainger, Inc. Group Benefit Plan, and W. W. Grainger, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 21, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 22 – Wal-Mart Stores, Inc. Associates Health & Welfare Plan**

174.   Aetna Member 22 is a member of the Wal-Mart Stores, Inc. Associates Health & Welfare Plan, sponsored by Wal-Mart Stores, Inc.

175.   The Wal-Mart Stores, Inc. Associates Health & Welfare Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Wal-Mart Stores, Inc. is designated by the Wal-Mart Stores, Inc. Associates Health & Welfare Plan as the plan administrator.  While Wal-Mart Stores, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Wal-Mart Stores, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Wal-Mart Stores, Inc. is a proper ERISA defendant.

176.   On 3/18/2014, Aetna Member 22 was admitted to HSH for knee surgery.  Before performing this medically-necessary procedure, the following administrative process was followed:

> a.   HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 22 had coverage for the proposed procedures under the Wal-Mart Stores, Inc. Associates Health & Welfare Plan.

> b.   HSH received a signed assignment of benefits from Aetna Member 22.

c. HSH billed Aetna Member 22 an initial payment for the proposed procedures.

177.     After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 22 at HSH.   After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Wal-Mart Stores, Inc. Associates Health & Welfare Plan and Wal-Mart Stores, Inc.

178.     Aetna's EOB, processed on 3/31/2014, states that the claim for Aetna Member 22 was denied as an "improper claim submittal."   Aetna, the Wal-Mart Stores, Inc. Associates Health & Welfare Plan, and Wal-Mart Stores, Inc.  failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

179.     Aetna, the Wal-Mart Stores, Inc. Associates Health & Welfare Plan, Wal-Mart Stores, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 22, and continue to fail to comply with their obligations under ERISA.

**Aetna Member 23 – Wood Group Management Services, Inc. Health Benefits Plan**

180.    Aetna Member 23 is a member of the Wood Group Management Services, Inc. Health Benefit Plan, sponsored by Wood Group Management Services, Inc.

181.    The Wood Group Management Services, Inc. Health Benefit Plan is a self-funded plan, governed by ERISA.  Upon information and belief, Wood Group Management Services, Inc. is designated by the Wood Group Management Services, Inc. Health Benefit Plan as the plan administrator.  While Wood Group Management Services, Inc. has delegated to Aetna authority to make receive, process, and investigate claims, upon information and belief, Wood Group Management Services, Inc. retains ultimate fiduciary authority, responsibility, and control over plan administration, including coverage and payment.  As a result, Wood Group Management Services, Inc. is a proper ERISA defendant.

182.    On 7/2/2013, Aetna Member 23 was admitted to HSH for spine surgery with implants.  Before performing this medically-necessary procedure, the following administrative process was followed:

a.    HSH's billing agent contacted Aetna and received verification from Aetna that Aetna Member 23 had coverage for the proposed procedures under the Wood Group Management Services, Inc. Health Benefit Plan.

b.    HSH received a signed assignment of benefits from Aetna Member 23.

c.    HSH billed Aetna Member 23 an initial payment for the proposed procedures.

183.    After receiving and relying upon Aetna's verification of coverage, the procedure described above was performed on Aetna Member 23 at HSH.  After the procedure was completed, HSH's billing agent properly submitted a claim for this medical procedure to Aetna on behalf of the Wood Group Management Services, Inc. Health Benefit Plan and Wood Group Management Services, Inc.

184.    Aetna's EOB, processed on 12/9/2013, states that the claim for Aetna Member 23 was denied as an "improper claim submittal."   Aetna, the Wood Group Management Services, Inc. Health Benefit Plan, and Wood Group Management Services, Inc. failed to comply with ERISA by, among other things, refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

185.    Aetna, the Wood Group Management Services, Inc. Health Benefit Plan, and Wood Group Management Services, Inc. continue to refuse to pay for the medical procedures received at HSH by Aetna Member 23, and continue to fail to comply with their obligations under ERISA.

## V.  CAUSES OF ACTION

**Count 1:  Breach of Plan Provisions for Benefits in Violation of ERISA § 502(A)(1)(B) (Against All Defendants)**

186.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

187.    HSH is entitled to reimbursement under the Aetna Plans for the medical procedures performed on Aetna Members at HSH.

188.     Since at least October 25, 2013, Defendants have breached the terms of the Aetna Plans by refusing to make out-of-network reimbursements for Covered Charges, in violation of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  These breaches include, among other things, refusing to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for medically-necessary procedures performed at HSH.

189.     HSH has standing to pursue claims under ERISA as an assignee and authorized representative of Aetna Members' claims under the Aetna Plans.

190.     As a result of, among other acts, Defendants' numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and HSH is entitled to have this Court undertake a *de novo* review of the issues raised herein.

191.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), HSH is entitled to recover unpaid benefits from Defendants.  It also is entitled to declaratory and injunctive relief to enforce the terms of the Aetna Plans and to clarify its right to future benefits under such plans, as well as attorneys' fees.

**Count 2:  Violation of Fiduciary Duties of Loyalty And Due Care in Violation of ERISA § 404 (Against All Defendants)**

192.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

193.     As ERISA fiduciaries, Defendants owed a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, as a fiduciaries, Defendants were required to ensure that it was acting in accordance with the documents and instruments governing the Aetna Plans, in accordance with § 404(a)(l)(B) and (D) of ERISA, 29 U.S.C. § 1104(a)(l)(B) and (D).  In failing to act prudently, and in failing to act in accordance with the documents governing

the Aetna Plans, since at least October 25, 2013, Defendants have violated their fiduciary duty of care.

194.    As fiduciaries, Defendants also owed a duty of loyalty, defined as an obligation to make decisions in the interest of the plan members, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of members, in accordance with § 404(a)(l)(A) of ERISA, 29 U.S.C. § 1104(a)(l)(A) and § 406 of ERISA, 29 U.S.C. § 1106. Thus, Defendants could not make benefit determinations for the purpose of saving money at the expense of the Aetna Members.

195.    Since at least October 25, 2013, Defendants have violated their fiduciary duty of loyalty by, among other things, refusing to make out-of-network reimbursements for medical treatment provided at HSH for its own benefit, at the expense of Aetna Members.  In addition, Defendants violated their fiduciary duty of loyalty by failing to inform Aetna Members of material information.  Specifically, as set forth more fully above, since October 25, 2013, Defendants have made representations about their intent to make out-of-network reimbursements for use of HSH's facility that they knew were untrue.

196.    HSH has standing to pursue claims under ERISA as an assignee and authorized representative of Aetna Members' claims.

197.    HSH is entitled to relief to remedy Aetna's violation of its fiduciary duties under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, and may seek removal of Aetna for breaching its fiduciary duties.

**Count 3:  Denial of Full And Fair Review in Violation of ERISA § 503 (Against All Defendants)**

198.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

199.    As an assignee and authorized representative of Aetna Members' claims, HSH is entitled to receive protections under ERISA, including (a) a "full and fair review" of all claims denied by Aetna; and (b) compliance by Aetna with applicable claims procedure regulations.

200.    Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to § 503 of ERISA, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions:  refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.   The consequence of Defendants' failure to comply with the ERISA claims procedures regulations is that Aetna failed to provide a reasonable claims procedure.

201.    Because Defendants have failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(*l*) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).   Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not acknowledge any basis for their denials, and thus offers no meaningful administrative process for challenging such denials.

202.    HSH has been harmed by the failure to provide a full and fair review of appeals submitted under § 503 of ERISA, 29 U.S.C. § 1133, and by the failures to disclose information relevant to appeals and to comply with applicable claims procedure regulations.

203.    HSH is entitled to relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy the failure to provide a full and fair review and by the failures to disclose information relevant to appeals and to comply with applicable claims procedure regulations.

**Count 4:  Failure to Provide Information in Violation of ERISA § 502(c) (Against All Defendants)**

204.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

205.    In appealing the claims at issue, HSH's billing agent specifically requested from Defendants both the Aetna Plans and plan-related documents.  Defendants have refused and continue to refuse to provide those documents.

206.    HSH is entitled to the requested Aetna Plans and plan-related documents under § 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), and the claim procedures regulations, 29 C.F.R. § 2560.503-1(h)(2)(iii).  HSH has standing to pursue claims under ERISA as an assignee and authorized representative of Aetna Members' claims under the Aetna Plans.

207.    HSH is entitled to relief to remedy Defendants' refusal to provide information under § 502(c) of ERISA, 29 U.S.C. § 1132(c), including a civil penalty of $110 per day until the requested documents are produced.

**Count 5:  Breach of Express Contract (Non-ERISA Plans)**

208.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

209.    The Aetna Plans include governmental plans that are not subject to regulation under ERISA.

210.    Aetna has failed to reimburse fees for medically-necessary procedures that were performed on Aetna Members that are covered under these non-ERISA plans, in breach of Defendants' contractual obligations under these plans.

211.    HSH is entitled to entitled to recover from Aetna the unpaid benefits related to the procedures performed at HSH for Aetna Members covered under these non-ERISA plans.  HSH is also entitled to recover its attorneys' fees related to Aetna's breach.

**Count 6:  Breach of Implied-in-Fact Contract (Against Aetna)**

212.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

213.    Separate and distinct from the Aetna Plans, there is an implied-in-fact contract with Aetna in connection with the medically-necessary treatment performed at HSH.  Aetna expressly represented that the Aetna Plans reimburse fees associated with the medical treatment provided at HSH at the usual and customary rate.  In exchange, the medical treatment was provided to Aetna Members at HSH.

214.    Since October 25, 2013, Aetna has refused to reimburse claims for medical treatment provided at HSH, in breach of its implied-in-fact contract.

215.    As a direct and proximate result of Aetna's breach of contract, HSH has suffered and continues to suffer monetary damages, for which it is entitled to recover.  HSH is also entitled to recover its attorneys' fees related to Aetna's breach.

**Count 7:  Fraud (Against All Defendants)**

216.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

217.    Aetna represented that the Aetna Members receiving medical treatment at HSH were covered under an Aetna Plan, and that the fees associated with that treatment were Covered Charges under the Aetna Plans.  In fact, on numerous occasions after October 25, 2013, Aetna represented that fees for medical treatment provided at HSH would be compensated in accordance with usual and customary rates.  Yet, when the time for reimbursement came, Aetna denied reimbursement.

218.    Aetna knew its representations about coverage were false.  Aetna knew that it was going to deny virtually every claim for medical treatment provided at HSH after October 25, 2013, despite routinely verifying and pre-certifying coverage after that date.

219.    Medical treatment was provided at HSH to Aetna Members in reliance on Aetna's representations regarding coverage and benefits.  In the absence of Aetna's representations that it would reimburse the fees associated with the medical treatment provided at HSH, the treatment would not have been provided at HSH.  This reliance was foreseeable, as Aetna's representations were made in the context of phone calls from HSH's billing agents to verify and pre-certify coverage prior to the medical treatment being provided, and there was no ability for HSH to learn, separate and apart from these representations by Aetna, whether Aetna considered the fees related to this medical treatment to be Covered Charges under the relevant Aetna Plans.

220.    As a direct and proximate result of Aetna's misrepresentations, HSH has suffered and continues to suffer monetary damages, for which it is entitled to recover.  HSH is also entitled to exemplary damages as a result of Aetna's fraud.

**Count 8:  Negligent Misrepresentation (Against All Defendants)**

221.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

222.    After Aetna was informed by HSH's billing agent of the specific treatment to be provided to the Aetna Member, the facility where the treatment was to be performed (HSH), and the identity of the patient, Aetna represented to HSH that the fees associated with that treatment were Covered Charges under the Aetna Plans.

223.    Aetna owed a duty to reasonably and adequately investigate the existence of coverage and benefits prior to making these representations to HSH.   HSH lacked the knowledge, and/or the means to gain the knowledge, concerning the specific methods and means by which Aetna determines reimbursement.  As a result, HSH relied upon the representations of Aetna.

224.    Aetna breached its duties to HSH by failing to exercise reasonable care and competence in conveying true and accurate information concerning eligibility, coverage and benefit levels.  Further, Aetna failed to disclose to HSH that it intended not to pay virtually all claims for Covered Charges submitted for medical treatment provided at HSH.

225.    Medical treatment was provided at HSH to Aetna Members in reliance on Aetna's representations regarding coverage and benefits.  In the absence of Aetna's representations that it would make remuneration for the fees associated with the medical treatment provided at HSH, the medical treatment would not have been provided at HSH.

226.    As a direct and proximate result of Aetna's negligent misrepresentations, HSH has suffered and continues to suffer monetary damages, for which it is entitled to recover.  HSH is also entitled to exemplary damages as a result of Aetna's negligent misrepresentations.

**Count 9:  Promissory Estoppel (Against All Defendants)**

227.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

228.     Aetna represented to HSH that the Aetna Members receiving medical treatment at HSH were covered under an Aetna Plan, and that the fees associated with that treatment were Covered Charges under the Aetna Plans.  Based on Aetna's statements that the patients seeking medical care and treatment had active coverage and benefits, it was reasonably understood that some payment would be forthcoming for the medical treatment performed at HSH.

229.     Medical treatment was provided at HSH to Aetna Members in reliance on Aetna's statements regarding coverage and benefits.  In the absence of Aetna's statements that it would make remuneration for the fees associated with this treatment, the medical treatment would not have been provided at HSH.  This reliance was foreseeable, as Aetna's representations were made in the context of telephone calls from HSH's billing agents to verify and pre-certify coverage prior to the medical treatment being provided, and there was no ability for HSH to learn, separate and apart from these representations by Aetna, whether Aetna considered the fees related to this medical treatment to be Covered Charges under the relevant Aetna Plans.

230.     As a result of HSH's reliance on Aetna's statements, HSH has suffered and continues to suffer monetary damages, for which it is entitled to recover.

**Count 10:  Violations of Texas Insurance Code (Against Aetna)**

231.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

232.     Aetna's conduct has violated the Texas Insurance Code.  Specifically, Aetna has violated § 541.060 of the Texas Insurance Code through unfair settlement practices, including but not limited to, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of claims with respect to which Aetna's liability has become reasonably clear.

233.     Further, Aetna has violated § 541.060 of the Texas Insurance Code by failing to promptly provide reasonable explanations of the basis in the Aetna Plan for Aetna's denial of

claims and by refusing to pay claims without conducting a reasonable investigation with respect to such claims.

234.    Aetna has also violated the Texas Insurance Code by failing to promptly and properly reimburse claims as required by § 542.058 of the Texas Insurance Code.  Aetna was billed for use of HSH's facility to perform medically-necessary surgical procedures on Aetna Members.  Aetna has failed and refused to pay HSH for more than 60 days the fair and reasonable amount of the charges in satisfaction of these claims, in violation of the express terms of the Aetna Plans and § 542.058 of the Texas Insurance Code.

235.    As set forth more fully above, Aetna has also made statements that misrepresented terms, benefits, and/or advantages regarding the Aetna Plans, in violation of §§ 541.051, 541.052, 541.060, and 541.061 of the Texas Insurance Code.  Specifically, Aetna engaged in unfair and deceptive acts and trade practices in the business of insurance, in violation of the Texas Insurance Code, by: (1) making statements misrepresenting the benefits or advantages promised by an insurance contract; (2) making untrue, misleading, and/or deceptive representations regarding the business of insurance or a person in the conduct of the person's insurance business; (3) making an untrue statement of material fact in the business of insurance; (4) making an untrue statement of material fact; (5) failing to state material facts necessary to make other statements not misleading, considering the circumstances under which the statements were made; (6) making statements in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and (7) failing to disclose a matter required by law to be disclosed.

236.    Aetna's concerted refusal to deal also constitutes an illegal boycott and act of coercion in violation of § 541.054 of the Texas Insurance Code.

237.     HSH relied on the acts or practices enumerated above to their detriment.  The acts or practices enumerated above were a producing cause of HSH's damages.

238.     Based on Aetna's violations of the Texas Insurance Code, HSH is entitled to damages, as provided by Chapters 541 and 542 of that code, plus reasonable attorneys' fees. HSH is also entitled to interest at the rate of 18% per year for Aetna's refusal to comply with the prompt payment provisions of the Texas Insurance Code.  *See* Tex. Ins. Code § 542.060. Further, because HSH will be able to show that Aetna's conduct was all done "knowingly" (within the meaning of such term under the Texas Insurance Code), HSH is entitled to treble damages.  *See* Tex. Ins. Code § 541.152.

**Count 11:  Temporary and Permanent Injunctive Relief (Against All Defendants)**

239.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

240.     Defendants have wrongfully denied virtually all claims for benefits submitted for medical treatment provided at HSH since October 25, 2013.  In so doing, Defendants have failed to comply with the terms of the Aetna Plans and their other obligations, including their obligations under ERISA.

241.     Unless enjoined from doing so, Defendants will continue to not comply with the terms of the Aetna Plans and their other obligations, including under ERISA, to HSH's severe detriment.  A monetary judgment in this case will only compensate HSH for past losses, and will not stop Defendants from continuing to confiscate the money earned by HSH and necessary to maintain its medical facility.  HSH has no practical or adequate remedy, either administratively or at law, to avoid these future losses.

242.     HSH is entitled to a preliminary and permanent injunction requiring Defendants to process claims for services performed at HSH in accordance with the terms of the Aetna Plans, and requiring Defendants to stop summarily denying claims for medically-necessary services provided by HSH.

## VI.  CONDITIONS PRECEDENT

243.     All conditions precedent have been performed or have occurred.

## VII.    JURY DEMAND

244.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, HSH hereby requests a trial by jury on all issues so triable.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, HSH demands judgment in its favor against Defendants as follows in connection with each claim for benefits submitted to Aetna for hospital services performed at HSH that, since 10/25/2013, HSH has been denied payment:

A.     declaring that Defendants have breached the terms of the Aetna Plans with regard to out-of-network benefits and awarding damages for unpaid out-of-network benefits, as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein that are unauthorized by the Aetna Plans;

B.     awarding damages based on Defendants' fraudulent and negligent misrepresentations and nondisclosures and based on promissory estoppel, including any exemplary damages permitted by law;

C.     awarding damages caused by Aetna's violations of the Texas Insurance Code, including any treble damages permitted by law;

D.     declaring that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Defendants' actions, as well as awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

E.      declaring that Defendants violated their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1106, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

F.      declaring that Defendants failed to comply with requests for information in violation of § 502(c) of ERISA, 29 U.S.C. 1132(c), and awarding HSH civil penalties of $110 per day until the requested information is provided;

G.      awarding other compensatory damages;

H.      temporarily and permanently enjoining Defendants from continuing to pursue their actions detailed herein, and ordering Defendants to pay benefits in accordance with the terms of the Aetna Plans and applicable law;

I.      awarding reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including Chapter 38.001 *et seq.* of the Texas Civil Practice and Remedies Code; § 541.142 of the Texas Insurance Code; and § 502(g) of ERISA, 29 U.S.C. § 1132(g);

J.      awarding costs of suit;

K.      awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity, including § 542.058 of the Texas Insurance Code; and

L.      awarding HSH all other relief to which it is entitled.

Respectfully submitted,

By: */s/ Edward John ("Jack") O'Neill, Jr.*
Edward John ("Jack") O'Neill, Jr.
Texas Bar No. 15288500
Southern District of Texas No. 3696
*Attorney in Charge*

PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600  Main
(713) 634-3638  Direct
(713) 634-3639  Facsimile
joneill@pierceoneill.com

OF COUNSEL:

Scott R. Humphrey
Texas Bar No. 24032442
Southern District of Texas No. 592627
shumphrey@pierceoneill.com
Courtney E. Hawkins
Texas Bar No. 24050732
Southern District of Texas No. 685226
chawkins@pierceoneill.com
Brian Cathey
Texas Bar No. 24080825
Southern District of Texas No. 1531850
bcathey@pierceoneill.com

PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600  Main
(713) 634-3639  Facsimile

                           ATTORNEYS FOR PLAINTIFF
                           HUMBLE SURGICAL HOSPITAL, LLC